UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| DAVID J. THOMPSON and ANTHONY CESSA, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil Action No. 11-11394-LTS |
| MARIAN J. McGOVERN and MASSACHUSETTS PORT AUTHORITY, | ) ) ) ) | |
| Defendants. | ) ) | |

ORDER

October 22, 2013

SOROKIN, C.M.J.

Pending before the Court and ripe for disposition is a motion by defendant Massachusetts Port Authority ("MassPort") seeking to join in defendant Marian J. McGovern's request for dismissal based on sovereign immunity. See Doc. No. 17. The motion has been briefed, including supplemental submissions on various topics filed at the direction of the Court. See Doc. Nos. 17, 18, 45, 46, 50, 53. After careful consideration of the legal issues presented by McGovern's original motion to dismiss and MassPort's subsequent request for joinder, this action is DISMISSED with prejudice for the reasons that follow.

I.   BACKGROUND

In August 2011, plaintiffs David Thompson and Anthony Cessa sued McGovern, in her capacity as the Superintendent of the Massachusetts State Police ("MSP"), and David S. Mackey, the Interim Chief Executive Officer of MassPort, alleging violations of the Fair Labor

1

Standards Act ("FLSA").  Doc. No. 1.  The plaintiffs, who are retired MSP officers previously assigned to "Troop F" at Logan International Airport ("Logan"),[1] sought payment of compensatory time they claim they were owed at the time of their retirement, liquidated damages, attorney's fees and costs, and other damages described as "whatever punitive measures against the Defendants that this Court may see fit to impose."  Id. at ¶ 27.  After the action was instituted, Mackey was dismissed and MassPort was substituted as the appropriate defendant.  See Doc. No. 24.

McGovern promptly moved to dismiss the claims against her, invoking the doctrine of sovereign immunity.  Doc. Nos. 10-11.  Although MassPort answered the complaint, it subsequently sought to join in McGovern's motion.[2]  Doc. Nos. 13, 17.  The parties consented to proceed before a Magistrate Judge, and the matter was transferred to the undersigned.  Doc. Nos. 21, 22.  Following a motion hearing in March 2012, the Court dismissed the plaintiffs' claims for money damages against McGovern, stayed any potential claims against her for injunctive relief, and took MassPort's motion for joinder under advisement.  Doc. No. 24.

Thereafter, the parties requested a referral to the Court's mediation program, so the action was stayed pending their efforts to resolve the plaintiffs' claims without further litigation.  See Elec. Order dated Apr. 4, 2012.  Mediation proceedings ultimately were stayed as well,

---

[1] The plaintiffs received this assignment pursuant to an agreement between the MSP and MassPort entitled "Contract for Police Services to Port Properties of the Massachusetts Port Authority."  Doc. No. 46-1.  The relevant terms of this contract will be discussed below.

[2] To the extent MassPort's motion is more properly considered as one for judgment on the pleadings pursuant to Rule 12(c) because it has answered the complaint, the Court can and will treat it as such.  See Padson v. City of Peabody, 417 F.3d 225, 226 (1st Cir. 2005) (noting standards for resolving motions pursuant to Rules 12(b) and 12(c) are "essentially the same").

2

when the Court learned that questions similar to those presented in this action were the subject of a pending arbitration involving the MSP and the State Police Association of Massachusetts ("SPAM"), which represents the plaintiffs and other active and retired state police officers.  See Elec. Order dated Sept. 27, 2012.

Because the prospect of settlement via mediation or arbitration remained uncertain in May 2013, the Court lifted the stay and sought further briefing from the parties regarding the relevant collective bargaining agreement ("CBA") between MSP and SPAM, whether arbitration was required,[3] MassPort's claim of sovereign immunity, and the legal basis for the plaintiffs' claims against MassPort.  Doc. Nos. 44, 52.  Supplemental submissions were filed, in which the plaintiffs have specified the limited nature of their claim in this action.  Doc. Nos. 45, 46, 50, 53.  Their original complaint appeared to allege that the defendants had somehow abused or violated certain provisions of the CBA.  See, e.g., Doc. No. 1 at ¶ 16 (alleging a clause in the CBA was "stretched" beyond its intended reach).  Now, the plaintiffs have conceded that they were paid "in accordance with the provisions of the CBA," Doc. No. 50 at 3, and have clarified that their sole claim in this action is that a particular CBA provision violates the overtime pay requirements of the FLSA, id. at 1.  Specifically, they challenge a provision of the CBA that they allege prevents officers who attend training from earning time-and-a-half overtime (or compensatory time), and instead results in them receiving only one day of compensatory time for each day spent in training.  Doc. No. 1 at ¶¶ 14-16; Doc. No. 53 at 3.

With respect to their claim against MassPort, the plaintiffs acknowledge that MassPort

---

[3]No party to this action has cited any requirement – within the CBA or otherwise – that the plaintiffs submit their claims to arbitration rather than pursue them via litigation.  As such, the Court need not explore the issue further.

was contractually obligated to pay them in accordance with the terms of the CBA, but the plaintiffs argue MassPort had a separate obligation to ensure that their compensation complied with the FLSA.  Doc. No. 53 at 3.

II.     DISCUSSION

   A.     Stay of Dismissal as to McGovern

As the Court previously determined, the Eleventh Amendment to the United States Constitution precludes the plaintiffs' claims for monetary damages against McGovern.  This is so because she has been sued in her official capacity as the Superintendent of the MSP,[4] which is an arm of the Commonwealth of Massachusetts.  Although the FLSA contains language evidencing Congress's intent to extend its reach to permit federal suits against public employers, both the Supreme Court and the First Circuit have concluded Congress lacked the power to abrogate state sovereign immunity from private FLSA actions in federal court.  See Seminole Tribe v. Florida, 517 U.S. 44 (1996) (concluding neither the Commerce Clause nor anything else in Article I permits Congress to grant jurisdiction to federal courts in suits involving states that have not consented to such suits); Mills v. Maine, 118 F.3d 37 (1st Cir. 1997) (discussing Seminole Tribe and concluding the relevant FLSA provisions likewise exceeded the scope of Congress's authority pursuant to the Equal Protection Clause of the Fourteenth Amendment).

The plaintiffs' claims are not saved from dismissal by their decision to name McGovern,

---

[4]To the extent the plaintiffs seek to transform their claim against McGovern into one against her in her personal, rather than official, capacity, the allegations in their complaint are wholly insufficient to establish a basis for such personal liability, even at the pleading stage.  For example, there are no allegations that she personally negotiated the relevant provisions of the CBA, let alone that she did so in knowing or reckless disregard of federal or state requirements regarding fair compensation.

rather than the MSP or the Commonwealth, as a defendant here. The bar of sovereign immunity can be avoided "by naming a state officer in his official capacity [only] in cases where prospective declaratory and injunctive relief [are] sought under federal law." Mills, 118 F.3d at 53 (discussing Ex Party Young, 209 U.S. 123 (1908)). Here, the plaintiffs seek only monetary damages – which, in fact, constitute the only sort of relief available to the plaintiffs as employees bringing suit pursuant to the FLSA. See id. at 55 (explaining the FLSA permits employees to sue for unpaid wages and liquidated damages, but only the Secretary of Labor may seek injunctive relief).

As such, insofar as the Court initially denied McGovern's request for dismissal and stayed the action with respect to her based on the possibility that the plaintiffs might seek prospective injunctive relief, the stay is now lifted and the action dismissed in its entirety due to the unavailability of such prospective relief in light of Mills.

> B.  MassPort's Motion for Joinder/Dismissal

The plaintiffs agree, as they must, that MassPort was not a party to the CBA, nor did it in any way control the terms negotiated between the MSP and SPAM and contained therein. Doc. No. 53 at 3. Thus, although the plaintiffs might reasonably fault the MSP (and SPAM, for that matter) for forming a contract that purportedly violates the FLSA,[5] the basis for imposing liability on MassPort for an allegedly illegal term in the CBA is far less certain.

The plaintiffs appear to suggest that because MassPort paid them, the Court should view MassPort as their employer for FLSA purposes. That view, however, is contrary to the terms of

---

[5]The Court takes no view of whether the challenged provision of the CBA does, in fact, violate the FLSA.

the agreement defining MassPort's role with respect to the plaintiffs.  The relevant contract between the MSP and MassPort contained provisions explicitly limiting the nature of MassPort's relationship with MSP officers, like the plaintiffs, who were assigned to work at Logan.  Most critically, the contract stated:

> All troopers and officers assigned [to Logan] shall be placed on the payroll of [MassPort] and be paid in accordance with the salary scale of the Division of State Police, *although such troopers and officers shall at all times be employees of the Commonwealth and not of [Massport]*.

Doc. No. 46-1 at ¶ 4 (emphasis added).

Regarding MassPort's obligation to compensate the officers, the contract provided: "[MassPort], *upon proper written notice from the [MSP]*, shall . . . be responsible for": making appropriate deductions and contributions to pension, retirement, and insurance plans; tracking accrued sick leave; compensating officers who were injured while on duty; and determining earned vacation and compensatory time in accordance with relevant MSP policies.  Id. at ¶ 12 (emphasis added).  The plaintiffs concede that these provisions of the contract between the MSP and MassPort "required [MassPort] to follow the disputed provision of the CBA and compensate Troopers one day for each [day-off-lost] rather than 1.5 days for each [day-off-lost] as mandated by the [FLSA]."  Doc. No. 53 at 3.

Such provisions substantially undermine any effort by the plaintiffs to impose liability on MassPort, as they dispel the view that MassPort functioned as the plaintiffs' "employer."  Even if MassPort could be considered the plaintiffs' employer for FLSA purposes, the plaintiffs have not alleged MassPort or any of its agents engaged in any independent wrongful conduct.  As previously noted, MassPort is not responsible for drafting or agreeing to the disputed provision in the CBA.  Moreover, the same contract provisions excerpted above eliminate any room for

concluding that MassPort exercised even a modicum of discretion over the plaintiffs' compensation.  Indeed, those provisions obligated MassPort to pay the plaintiffs only at the MSP's direction, and only in line with the terms of the CBA and other MSP policies applicable to all MSP officers.  Furthermore, the plaintiffs have conceded that MassPort paid them in accordance with its contractual obligations.  See Doc. No. 50 at 3.  In other words, the only "wrong" the plaintiffs attribute to MassPort is its failure to independently assess the terms governing the plaintiffs' compensation for violations of federal law, recognize the alleged FLSA violation, and then eschew its own contractual obligations by unilaterally revising the manner in which the plaintiffs were compensated.

In any event, even assuming MassPort could be considered the plaintiffs' employer, and that the plaintiffs adequately have alleged FLSA violations by MassPort, the plaintiffs' claims are precluded by the doctrine of derivative sovereign immunity.  MassPort generally is not an arm of the Commonwealth for Eleventh Amendment purposes.  For purposes of this case, however, in fulfilling its duty to pay the plaintiffs, MassPort is appropriately viewed as "a private company which contracts with the [Commonwealth] to perform the duties of the [Commonwealth]."  City of Worcester v. HCA Mgmt. Co., 753 F. Supp. 31, 38 (D. Mass. 1990).  Because MassPort was "performing delegated duties pursuant to governmental authority, suit against [MassPort] would be tantamount to suit against the [Commonwealth] itself."  Id.; see Pa. Envtl. Council, Inc. v. Bartlett, 315 F. Supp. 238, 247 (M.D. Pa. 1970) (finding road construction contractors immune from suit where the allegations arose from work performed in accordance with a state contract).  As such, MassPort may not be held liable for actions taken pursuant to its contract with the MSP unless: "(1) its action was beyond the authority delegated to it; (2) the

authority was invalidly conferred; or (3) the harm was caused by [MassPort's] own tortious conduct." HCA Mgmt. Co., 753 F. Supp. at 38.  Considering the plaintiffs' allegations and concessions, none of these three exceptions apply here.

The plaintiffs' claims against MassPort, therefore, fail as a matter of law.[6]

III.  CONCLUSION

Accordingly, it is hereby ORDERED as follows: (i) the stay of the Court's March 21, 2012 Order dismissing the plaintiffs' claims for monetary damages against McGovern is LIFTED; (ii) all claims against McGovern are DISMISSED with prejudice; (iii) MassPort's Motion for Joinder is ALLOWED; and (iv) all claims against MassPort are DISMISSED with prejudice.

SO ORDERED.

   /s / Leo T. Sorokin
Leo T. Sorokin
Chief United States Magistrate Judge

---

[6] This result makes good sense as a matter of broader public policy as well.  Other retired MSP officers who were not assigned to Logan and were paid by the Commonwealth directly, should they wish to bring FLSA claims mirroring those stated in the plaintiffs' complaint, would be limited to suing the Commonwealth, the MSP, or other officials such as McGovern.  As such, their claims would be precluded by the doctrine of sovereign immunity.  It makes little sense to suppose that the plaintiffs, by virtue of their assignment to Logan and the Commonwealth's delegation to MassPort of its obligation to compensate them, should be permitted to avail themselves of an avenue for relief unavailable to such other officers.